(No. 23981.—)

JOSEPHINE M. BLUMB, Admx., Appellant, *vs.* BEN GETZ, Appellee.

*Opinion filed April 21, 1937—Rehearing denied June 3, 1937.*

JONES and SHAW, JJ., dissenting.

CASSIDY & KNOBLOCK, for appellant.

CLARENCE W. HEYL, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Ben Getz, the defendant, on November 28, 1933, at about the hour of 12:00 o'clock, noon, while driving an automobile over and along State route 9, struck one Frank W. Blumb, as the result of which Blumb sustained injuries from which he died. This action was brought by the plaintiff, Josephine M. Blumb, as administratrix, to recover damages for her husband's death. A trial in the circuit court of Tazewell county resulted in a verdict by a jury in the amount of $3000 in favor of the plaintiff, and upon this verdict judgment was entered by the court. On appeal to the Appellate Court for the Third District the judgment was reversed, without remanding, upon the ground that there was no evidence tending to prove due care on the part of plaintiff's intestate and that the circuit court should have sustained the motion of the defendant at the close of the plaintiff's case to direct a verdict in his favor. We have granted the plaintiff's petition for leave to appeal, and the record is submitted for a further review.

A motion to direct a verdict is in the nature of a demurrer to the evidence. The rule is, that in considering such a motion the trial court should consider the evidence produced on the part of the plaintiff most strongly in plaintiff's favor and give to it every reasonable intendment favorable to plaintiff. The court should not weigh the evidence with the same particularity as it would upon a consideration of all the evidence on a motion for a new trial. This rule should follow the proceeding into the Appellate Court and if that court should find that there is any evidence, standing alone, which tends to support plaintiff's claim, then it becomes its duty to consider other alleged errors. If, however, after a consideration of all the evidence, the court is of the opinion that the deceased was not in the exercise of due care, it should remand the case for a new trial.

The declaration charged that the defendant, Ben Getz, was driving an automobile over and along State route 9 at a high rate of speed and without sounding any warning prior to, and at the time of, the accident in question. This highway was a hard-surfaced road extending in an easterly and westerly direction between the cities of Pekin and Morton, Illinois, and was eighteen feet in width. The road ran in an almost straight line so that a person driving an automobile could see anything ahead and so, also, could a pedestrian on the road observe the approach of an automobile. Running down the center of this highway was a black line which divided the eastbound traffic from that proceeding in a westerly direction. The home of John W. Nord, a brother-in-law of Frank W. Blumb, the deceased, was located on the north side of Route 9. On the day of the accident Blumb and Nord left the latter's house to go hunting. They proceeded in an easterly direction upon said highway and on the north side of the pavement. The sun was shining brightly, the atmosphere was clear and the pavement was dry. Nord and Blumb stopped temporarily while the latter was putting some shells in his belt. He took out of his pocket a package of cigarettes, lighted one, and they then continued along the highway. Blumb discovered, after they had proceeded about two hundred feet, that he had dropped one of his gloves at the place where he had lighted his cigarette. He turned and retraced his steps in order to recover it. From Nord's testimony it appears that the deceased, when he started back, was walking on the shoulder of the highway adjacent to and north of the hard surface reserved for automobiles. Nord proceeded along the highway and the automobile, driven by Getz, passed him going in a westerly direction at a speed, according to Nord, of fifty miles an hour. The witness testified that he walked on about forty feet farther after the car passed him; that he turned around and saw the car swaying to the right and left across the black line in the center

of the road, and that he then saw a dark object lying about the middle of the road which he found, upon returning, to be the body of the deceased. When Nord turned around he was approximately four hundred fifty feet east of the body.

Raymond Strubhar, a witness called on behalf of the plaintiff, testified that he was about two hundred feet from the highway where the accident happened, when he saw Blumb, the deceased, take two or three steps southwesterly across the highway and then saw him bend over; that at the time the deceased was bending over he was about two feet north of the black line and, at that time, the automobile was a distance of twenty or twenty-five feet away. Both of these witnesses testified that they heard no horn or warning signal prior to the accident. Strubhar further testified that after the car struck the deceased it "slid" his body about twelve feet and then proceeded about one hundred feet further before it stopped; that just prior to the time it struck the deceased it was swerving across the road toward the south.

It can be gathered from the testimony that there was very little traffic upon this highway at the time of the accident and that the car driven by the defendant was the only one that was actually proceeding over and along this highway, although an automobile driven by one Williams was proceeding in an easterly direction but was, at the time, west of the intersection of State routes 9 and 24. It is evident that this driver came up after the accident had happened. There was evidence in the record, from the rate of speed the car of the defendant was being driven, together with the fact that no warning signals were given, according to the evidence most favorable to the plaintiff, which might tend to show negligence on the part of the defendant. In considering the question of due care on the part of the plaintiff's intestate, it is well to remember that this cannot always be shown by direct proof but that the

evidence as adduced by the plaintiff should disclose facts from which it may reasonably be inferred that the plaintiff's intestate was in the exercise of due care. It was not negligence *per se* for the deceased, a pedestrian, to be upon the highway. As a matter of common knowledge, pedestrians upon highways running through the country use, and have a right to use, such highways, as well as the autoist, and both hold a mutual obligation, each to the other, to observe their reciprocal rights. The jury might take into consideration in its deliberations the fact, if it was a fact, that the pedestrian may have observed the coming automobile and believed that if it observed the speed law he would have ample opportunity, with safety, to step into the highway for the purpose of retrieving the glove which he had dropped. If the automobile was far enough away at the time to have justified a person in the exercise of ordinary care to have acted as the plaintiff did, it would not necessarily indicate such a lack of care on the part of the plaintiff as would amount, in law, to negligence. The question of contributory negligence is one which is preeminently a fact for the consideration of a jury. It can not be defined in exact terms and unless it can be said that the action of a person is clearly and palpably negligent, it is not within the province of the court to substitute its judgment for that of a jury which is provided for the purpose of deciding this as well as the other questions in the case. As was stated in *Thomas* v. *Buchanan*, 357 Ill. 270: "The question of due care on the part of the plaintiff's intestate is always a question of fact to be submitted to a jury whenever there is any evidence in the record which, with any legitimate inference that may reasonably and legally be drawn therefrom, tends to show the exercise of due care on the part of the deceased."

Our attention is directed to section 78 of the uniform act regulating traffic on highways, (State Bar Stat. 1935, p. 2796,) placing the duty on a pedestrian, when using a

highway, to keep on the left of the paved portion, or on the left shoulder of the highway. The witness Nord placed deceased, on his return journey to recover his glove, upon the shoulder of the highway on the right. It is urged that the violation of this enactment by deceased was negligence *per se*. The cases cited in support of this contention are for the most part where the accident occurred during the night time. We are unable to agree that a pedestrian walking on an unpaved shoulder of a highway in the day time, and off the place provided for traffic, could be considered guilty of negligence as a matter of law. The accident happened presumably after Blumb had reached the end of his journey and stepped on the hard-surfaced portion of the highway in order to recover his glove. This was the accomplishment of his purpose which he had in mind when he turned back.

From a consideration of the evidence introduced on the part of the plaintiff in this cause we are of the opinion that there was nothing in the evidence which would have warranted the trial court in finding, as a matter of law, that the plaintiff's intestate was not in the exercise of due care or was guilty of contributory negligence at, or just prior to, the time of the accident. The trial court properly submitted the issue to the jury. It follows that the Appellate Court was not justified in reversing the judgment without remanding the cause for a new trial. *Pollard* v. *Broadway Central Hotel Corp.* 353 Ill. 312.

The judgment of the Appellate Court is therefore reversed and the cause is remanded to that court, with directions to consider the assignment of errors other than the one we have decided, if any, and thereupon either to affirm the judgment of the trial court, or to reverse it and remand the cause for a new trial.

*Reversed and remanded, with directions.*

JONES and SHAW, JJ., dissenting.