Maximino GOMEZ, Cornelia Hernandez and Ventura Ibarra, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 11900.

United States Court of Appeals Seventh Circuit.

July 24, 1957.

Paul A. Sweeney, Chief, Appellate Section, Alan S. Rosenthal, Atty., U. S. Dept. of Justice, Washington, D. C., Rob-

ert Tieken, U. S. Atty., Chicago, Ill., and George Cochran Doub, Asst. Atty. Gen., for defendant-appellant.

Evar Christell, Jr., Samuel Fishman, Chicago, Ill., for plaintiffs-appellees.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

MAJOR, Circuit Judge.

Plaintiffs named in the caption brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., to recover damages for personal injuries allegedly sustained as a result of negligence on the part of a government employee acting within the scope of his employment. Prior to trial the action was dismissed as to Gomez. On May 31, 1956, Honorable William J. Campbell, a District Judge of the Northern District of Illinois, after trial without a jury, entered judgment for plaintiffs Hernandez (also referred to as De LaRosa) and Ibarra in the amounts of $750 and $500, respectively, plus costs. From this adverse judgment defendant appeals.

The errors relied upon for reversal arise out of the finding that the government employee was negligent and the contention by the government that the court placed upon it the burden of proving plaintiffs' contributory negligence. Obviously, Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which requires findings of fact by the court on a trial without a jury, is applicable, and it is agreed that the law of Illinois is controlling.

At approximately 4 a. m. on the morning of October 28, 1951, a post office mail truck driven by Joseph W. Major was proceeding in a southwesterly direction on Archer Avenue, a multi-lane principal thoroughfare in the City of Chicago. To the immediate left of the truck, proceeding in the same direction, was an airport transport bus driven by Gordon Pitchford. Plaintiffs were guest passengers in a privately owned automobile traveling north in Western Avenue. At the intersection of Western and Archer Avenues, the automobile in which plaintiffs were riding and the mail truck driven by Major collided, resulting in injuries to plaintiffs. A red and green traffic signal was in operation at the intersection in question.

We think we can do no better than utilize the statement made by Judge Campbell at the conclusion of the hearing, which he characterized as findings of fact, which follows: "De LaRosa and Ventura Ibarra were riding; Cornelia sitting in the front seat on the right-hand side, and Ventura sitting in the rear seat on the left-hand side were proceeding north in Western Avenue, approaching the intersection of Archer Avenue in the City of Chicago, County of Cook, State of Illinois, within this judicial District; that upon that automobile reaching the south crosswalk of Archer Avenue, following across straddling the east rail of the north bound car track in Western Avenue, the said automobile came to a stop and remained standing while two changes of traffic signals at that intersection occurred; that after the second change of traffic signals, the signal then being red or stop for traffic proceeding north or south on Western Avenue; the said vehicle in violation of said traffic signal proceeded northerly in the same course and at a speed of approximately fifteen miles per hour into the intersection.

"That at the same time and place on Archer Avenue proceeding in a southwesterly direction were two other vehicles, one an airport bus, which was following the course southwest on Archer Avenue with its left wheels slightly north of the center line of Archer Avenue, that is to say, following in the center lane of southwest bound traffic on Archer Avenue; that the vehicle of the defendant, a post office truck, was proceeding in a course immediately to the right or north of the said airline bus, traveling also southwest on Archer Avenue, and as the front of that vehicle being slightly behind or east of the front of the airline's bus; that as the said vehicles approached the intersection of

Western Boulevard, the traffic light at that intersection was red or stop for traffic proceeding as they were southwest on Archer Avenue.

"Then, in obedience to said signal, both of said vehicles did stop; that subsequently thereto the signal changed to green or proceed for traffic southwest bound on Archer Avenue and said vehicles both proceeded into the intersection of Western Boulevard, across the same, and approached the intersection of Western Avenue, the traffic signals of which operating in coordination with those on Western Boulevard were likewise green or go for traffic on Archer Avenue.

"That when the bus, still on the same course, reached the point where its front wheels were approximately even with the east line of the east crosswalk of Western Avenue, the said bus slowed down and in a few feet thereafter came to a complete stop; that the defendant's truck at that time and place continued on in the same course and at the same speed as it was traveling when the bus slowed down, that is to say, a speed of approximately, at that time, of twenty to twenty-five miles per hour; that the truck of the defendant continued on into the intersection of Western Avenue at the same time that the automobile of which the plaintiffs were riding continued on the course heretofore described; that the automobile of the plaintiffs passed in front of the bus, heretofore described, and directly into the path of defendant's vehicle. That the defendant's vehicle collided with and struck head-on the right side of the vehicle in which the plaintiffs were riding, as aforesaid, the front bumper of the defendant's vehicle coming in contact with the right front fender and right door of the automobile in which the plaintiffs were riding; that the force of the impact of the defendant's truck swung the car in which the plaintiffs were riding around so that it stopped facing directly approximately south and opposite the southwest corner of the intersection of Western Avenue and Archer.

"That the defendant's truck stopped at approximately the point of impact, that being the northeast corner of the intersection of Archer Avenue and Western Avenue, still facing west at approximately the point of impact.

"Then, immediately after the occurrence, the defendant's driver, and others, went to the plaintiffs' vehicle and found evidence of beer cans being in the plaintiffs' vehicle; that neither defendant's driver nor the driver of plaintiffs' vehicle, were as a matter of fact intoxicated, that both were in a normal condition after the accident."

The court then requested the parties to submit briefs on the issue of defendant's negligence and whether such negligence, if any, proximately contributed to plaintiffs' injuries. On a subsequent hearing Judge Campbell found that defendant's driver was negligent in entering the intersection even though he had the green light in his favor. He reasoned on this issue in part as follows:

"It appears quite clear that a reasonable man, under the circumstances that the defendant's driver found himself in this case, would not have relied blindly on the favorable traffic light and, in view of the fact that his vision to the south at the intersection was obstructed by a bus, would have had his vehicle under such control as necessary in order to stop when the bus stopped. In other words, the truck driver's conduct in staying under the protection of the bus until it came up to the intersection of Western Avenue and then proceeding blindly past the bus, accelerating rather than arresting his speed, not being able to stop 'on a dot', amounted to negligent conduct. In any event, whether such conduct amounts to negligence is a question of fact for the trier of facts and I accordingly do so hold that the defendant's truck driver in the instant case was guilty of actionable negligence.

"* * * In any event, the defendant's driver, in the exercise of reasonable diligence, could have apprehended that his conduct might possibly result in an accident and, had he acted as a reason-

able man would have acted under similar circumstances, could have easily avoided the instant collision. This is abundantly clear since the bus stopped a few feet west of the east cross walk of Western Avenue at a distance twenty-five feet west of the point where the bus driver began to apply his brakes; notwithstanding this, defendant's truck continued past the bus, across the outer lane of the northbound traffic on Western Avenue and into the inner lane of the northbound traffic where the collision occurred."

The court further found that the driver of the automobile in which plaintiffs were riding was negligent and that the negligence of such driver as well as that of defendant's driver proximately contributed to the collision. The court, citing Rhoden v. Peoria Creamery Co., 278 Ill.App. 452, as authority, held defendant liable notwithstanding the fact that the driver of plaintiffs' car was also negligent.

■ The government's contention in effect means that the driver of a motor vehicle who enters an intersection with the green light in his favor is free from negligence as a matter of law or, conversely, that the driver who enters an intersection against a red light is negligent as a matter of law. There is no case in Illinois or elsewhere, so far as we are aware, which has so held. An attempt to analyze and discuss the many cases called to our attention would not only unduly prolong this opinion but perhaps serve no useful purpose. The general rule in Illinois, as elsewhere, is that the issue of negligence is factual, to be determined by the trier of the facts, and that negligence becomes a question of law only when it can be said that all reasonable minds would reach the conclusion, under the evidence, that such evidence does not establish due care and caution on the part of the person charged therewith. That the issue of negligence as well as contributory negligence is factual is aptly illustrated by Moran v. Gatz, 390 Ill. 478, 62 N.E.2d 443. In that case a pedestrian crossing the street at an intersection in violation of a statutory provision was struck by a motor vehicle. It was argued there, as it is here, that as a matter of law there was no negligence on the part of the driver of the vehicle but contributory negligence on the part of the pedestrian. Both contentions were rejected. As to the former the court stated (390 Ill. at page 481, 62 N.E. 2d at page 444):

"* * * it has long been the rule in this State that the driver of a vehicle on a city street is charged with a duty to exercise reasonable care in the operation of his vehicle and to have his vehicle under such control as will enable him to avoid collision with other vehicles or pedestrians."

As to the latter, the court stated (390 Ill. at page 486, 62 N.E.2d at page 446):

"Each case must be determined from its particular facts. The question of contributory negligence is one which is pre-eminently for the consideration of a jury. It cannot be defined in exact terms and unless it can be said that the failure of the plaintiff to look again was so palpably contrary to the conduct of a reasonably prudent person as to show contributory negligence, the issue is one for the jury. Blumb v. Getz, 366 Ill. 273, 8 N.E.2d 620. Whether failure to look was shown and constituted, in this case, want of due care, was an issue of fact for the jury. Morrison v. Flowers, 308 Ill. 189, 139 N.E. 10." See also Thomas v. Buchanan, 357 Ill. 270, 277, 192 N.E. 215.

Even more to the point are two recent opinions of the Illinois Appellate Court, both relied upon by Judge Campbell, which hold that a factual issue is presented on the issue of negligence even though a motorist enters a street intersection on a favorable light. Dodds v. Chicago Transit Authority, 9 Ill.App.2d 388, 132 N.E.2d 816, and Janitch v. Coca Cola Bottling Co. of Chicago, Inc., 321 Ill.App. 629, 53 N.E.2d 286. (Neither of

these opinions is published in full.) In the Dodds case, the court stated (page 8):

"* * * It is also a fundamental rule of law that even a person upon whom is imposed the duty of only exercising ordinary care cannot blindly rely on traffic signals and proceed into an intersection when the signal is in his favor without a care or thought for the safety of others who may be in his path, and this is particularly true when he apprehends or with reasonable diligence could have apprehended that this conduct will probably result in an accident."

In the Janitch case, the court stated (page 2):

"* * * It is true plaintiff, because he could not see east for traffic, was bound to be more cautious. Reasonable men, however, might differ in their views whether proceeding in first gear at six miles an hour, able to stop 'on a dot' was not sufficient caution under the circumstances. Plaintiff could not rely on the bus driver's prudence, but again reasonable men might question whether staying under protection of the bus until it had crossed most of the north half of Monroe Street and then, moving out and able to 'stop on a dot' was negligent conduct. We believe these were questions of fact for the trial judge."

We think Judge Campbell's reasoning on the issue of negligence of defendant's driver is persuasive. It affords a reasonable basis for the finding which he made on that issue. In any event, we cannot hold that it is clearly erroneous and it must, therefore, be accepted by this court. In this connection, we observe that the government makes much of the fact that in Blumberg v. United States, 7 Cir., 246 F.2d 833, (decided simultaneously with the instant case) a result was reached apparently in conflict with that of the instant case. The Blumberg case was tried and decided by Honorable Philip L. Sullivan, and it is strenuously urged by the government that Blumberg and the instant case cannot both be affirmed. We shall not here recite or discuss the facts in the Blumberg case. It is sufficient to state that the government's argument is not tenable. In both cases the trial judge had factual issues for decision. It is a matter of common knowledge and experience that two trial judges, like two juries, on similar or even the same evidentiary facts may reach opposing results. Upon review, this court might be required to affirm both on the basis that the findings in neither were clearly erroneous. Such a result, incongruous as it may appear, is not an anomaly.

We think there is no solid basis for the government's contention that the court placed upon it the burden of proving plaintiffs' contributory negligence. The argument is based upon the following statement contained in the court's findings (or memorandum): "The issue presented is not free of its perplexing problems since the negligence of the driver of the plaintiffs' vehicle cannot be imputed to them. Nor has the defendant attempted to prove that the plaintiffs were themselves in any way negligent." It is not claimed, of course, that the negligence of the driver of the vehicle in which plaintiffs were riding is imputable to plaintiffs. Assuming the statement that defendant had made no attempt to prove plaintiffs' negligence was unfortunate, we do not think it means that defendant was charged with the burden to do so. Judge Campbell is too experienced a judge and lawyer to make that kind of mistake.

The complaint alleged, as was necessary, that plaintiffs at the time of the collision were in the exercise of due care and caution for their own safety. Defendant in its answer denied this allegation. No cases need be cited for the Illinois rule which places upon a plaintiff the burden of proving this allegation. The fact of the matter is, however, that Judge Campbell made no finding upon this issue. It is not even mentioned at

any point in his findings or discussion of the case.

The government argues that we should hold plaintiffs negligent as a matter of law. This we cannot do because we are convinced from a review of the circumstances in proof that the issue relative to plaintiffs' negligence is one of fact and not of law. Under Rule 52(a) we think it mandatory that a finding on this issue be made by the trial court. We are frank to state that because of the small amount involved, we would like to make a final disposition of the case. However, in view of the failure to make a finding on the issue under discussion, we do not know how it can be done without the risk of establishing a precedent which could well be embarrassing in the future.

The judgment is reversed and the cause remanded, with directions that the judgment be vacated and that a finding be made on the issue as to whether plaintiffs were at the time of the collision in the exercise of due care and caution for their own safety. The judgment to follow will depend upon a resolution of that issue.